UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ADELINE R.[1],

    **Plaintiff,**

v.

MICHELLE KING[2],
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 1:22-cv-6544
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Adeline R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Acting Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Michelle King, the current Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

**I.      PROCEDURAL HISTORY**

On October 1, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since that date. R. 74–75, 100–01, 290–303. The applications were denied initially and upon reconsideration. R. 135–44, 147–52. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 153–54. ALJ Margaret Pecararo held a hearing on February 10, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 16–51. In a decision dated July 15, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 108–26. That decision became final when the Appeals Council declined review on September 12, 2022. R. 1–9. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 11, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On August 14, 2023, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

**II.     LEGAL STANDARD**

    **A.     Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.   Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

5

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements for Disability Insurance Benefits through December 31, 2024. R. 111.[4] She was 50 years old on October 1, 2018, her alleged disability onset date. R. 122. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 111–12.

At step two, the ALJ found that Plaintiff's asthma, hypertension, carotid artery disease, and lumbago were severe impairments. R. 112. The ALJ also found that the following diagnosed impairments were not severe: history of bilateral carpal tunnel syndrome status post release, history of back surgery, chronic constipation, depression, and anxiety. R. 112–14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 114–15.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 115–25. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a babysitter. R. 121–22.

In the alternative and relying on the testimony of the vocational expert, the ALJ went on to step five and found that a significant number of jobs—*e.g.*, jobs as an information clerk, a cafeteria attendant, and a storage facility rental clerk—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 122–25. The ALJ therefore concluded

---

[4] Plaintiff was initially assigned a date last insured of December 31, 2018, but that date was later extended to December 31, 2024, based on reports of income from post-application work activity. R. 56–57, 69–70, 82, 84, 113, 312, 315, 342, 373, 384.

that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2018, Plaintiff's alleged disability onset date, through the date of the decision. R. 125.

Plaintiff disagrees with the ALJ's RFC finding at step four and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

### IV.   DISCUSSION

At step four, the ALJ in this case determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity *to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry ten pounds both occasionally and frequently*. She can frequently reach overhead bilaterally, and she can frequently perform fine and gross manipulations with the dominant right hand. She can never climb ladders, ropes or scaffolds, but she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never be around unprotected heights or dangerous machinery. She must avoid concentrated exposure to extremes of cold, fumes, odors, dusts, gases and poor ventilation.

R. 115 (emphasis added). Plaintiff argues that substantial evidence does not support this RFC determination because that RFC is inconsistent with light work and that the ALJ's error in this regard permeated the remainder of the ALJ's decision. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 11–15; *Plaintiff's Reply Brief*, ECF No. 15, pp. 1–3. For the reasons that follow, this Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In challenging the RFC in this case, Plaintiff argues that the ALJ's determination is internally inconsistent because light work is inconsistent with the ALJ's RFC limitation of occasionally and frequently lifting/carrying only 10 pounds. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 11–15 (citing, *inter alia*, SSR 83-10, 1983 WL 31251); *Plaintiff's Reply Brief*, ECF No. 15, pp. 1–3. According to Plaintiff, the ALJ's 10-pound limitation on lifting and carrying is more consistent with sedentary work. *Id*. Plaintiff complains that the ALJ further erred when she went on to find that Plaintiff could perform her past relevant work as a babysitter (listed in the Dictionary of Occupational Titles ("DOT") as requiring medium exertion but found to be light as Plaintiff actually performed it), and when she found, in the alternative, that Plaintiff could perform other representative occupations, all of which are light, unskilled jobs. *Id*. The

9

ALJ's erroneous RFC determination is not harmless, Plaintiff contends, because Plaintiff, who was 50 years old on her alleged disability onset date, would be found disabled under the Medical-Vocational Guidelines, or "Grids",[5] if she were limited to sedentary work. *Plaintiff's Memorandum of Law*, ECF No. 10, p. 15 (citing 20 C.F.R. Part 404, Subpart P, App'x 2 § 201.12). Plaintiff further argues that a limitation to sedentary work would also preclude the performance of her past relevant work as a babysitter as well as the three alternative light, skilled jobs found by the ALJ. *Id.* Plaintiff's arguments are not well taken.

> Light work involves
>
> *lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds*. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a *full or wide range* of light work, you must have the ability to do *substantially all* of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added); *see also* SSR 83-10, 1983 WL 31251, at *5 (defining light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and explaining further that although "the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs"). Sedentary work, however, involves

> *lifting* no more than 10 pounds at a time and *occasionally lifting or carrying* articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

---

[5] The Medical Vocational guidelines, also known as the "grids" or "Grids" "are 'rules' which are used to direct conclusions of 'disabled' or 'not disabled' based on a claimant's vocational factors (age, education, and work experience) and exertional RFC (sedentary, light, medium, heavy or very heavy)." *Martin v. Barnhart*, 240 F. App'x 941, 944 (3d Cir. 2007) (citations omitted).

20 C.F.R. §§ 404.1567(a), 416.967(a) (emphasis added); *see also* SSR 83-10, 1983 WL 31251, at *5 (defining sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met").

"Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations,[6] the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability." SSR 83-12 (1983), 1983 WL 31253, at *2. An ALJ "will consider the extent of any erosion of the occupational base and assess its significance." *Id.* An ALJ "will need to consult a vocational resource[,]" such as a vocational expert, if the degree of the erosion of the occupational base is unclear. *Id.*; *see also Lackey v. Colvin*, No. CIV.A. 12-516, 2013 WL 1903662, at *3 (W.D. Pa. May 7, 2013) ("SSR 83-12 expressly provides that the grids do not direct a conclusion of 'disabled' or 'not disabled' where "an individual's RFC does not coincide with the exertional criteria of any one of the [exertional] ranges" and that "vocational evidence is advisable" when an "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work,

---

[6] For example, an individual's RFC that falls between sedentary and light exertional work may have an RFC for a limited range of light exertional work. *See Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003) (noting, *inter alia*, that the claimant's RFC "does not . . . fall neatly into either category [sedentary or light exertional work]" and therefore "the ALJ found that [the claimant] can do a limited range of light work").

more difficult judgments are involved as far as the sufficiency of the remaining occupational base to support a conclusion as to disability") (citing SSR 83-12).

This is precisely what happened in this case. During the administrative hearing and after listening to Plaintiff's testimony, the vocational expert classified Plaintiff's past relevant work as a babysitter, which "is listed at medium[, but] [g]iven the age of the children it would be performed at the light level." R. 40–41. The ALJ then asked the vocational expert to assume a claimant with Plaintiff's vocational profile and the RFC ultimately found by the ALJ. R. 41–42, 115. In response, the vocational expert testified that such an individual could perform Plaintiff's past work as a babysitter as Plaintiff actually performed it. R. 42. The ALJ and the vocational expert next engaged in the following exchange regarding, *inter alia*, consistency with the DOT, the weight restrictions regarding light exertional work, and the weight limitations in the hypothetical previously posed to the vocational expert:

> Q Okay. And *is your testimony consistent with the DOT?*
>
> A *Yes*.
>
> Q Okay. *Even with the limitation to 10 pounds frequently and occasional limitation* as well as the overhead reaching and fine and gross manipulation restricts?
>
> A In terms of the fine and gross it would be consistent with the DOT. The DOT does not direct overhead reaching, but in the case of a babysitter it would be more than frequent overhead reaching as performed at the overhead level. *With regards to the weight restrictions, light is up to 20 pounds and as the claimant performed it 10 pounds would allow for the performance of past work.*
>
> Q Okay. What are you basing that on as opposed to the DOT?
>
> A Again, training and professional experience.

R. 42–43 (emphasis added). The vocational expert went on to identify other work that could be performed by a claimant with Plaintiff's vocational profile and the RFC found by the ALJ, specifically, the representative light, unskilled jobs of information clerk, cafeteria attendant, and

storage facility rental clerk. R. 43. The vocational expert again confirmed that his testimony was consistent with the DOT and that any exceptions were based on his training and professional experience. R. 43–44. In response to questioning by Plaintiff's counsel, the vocational expert addressed the weight limitations in the ALJ's hypothetical and the expert's classification of such limitations as consistent with light work rather than sedentary work:

> Q Thank you. *And you indicated the claimant performed it [her past work as a babysitter] at light? Is that correct?*
>
> A *Yes.*
>
> Q *What did you do to reach that conclusion?*
>
> A *Information from the children being five and above. There would be no need for lifting and carrying.*
>
> Q Okay. Let's see. The first hypothetical, hypothetical number one -- it indicated *lifting would be limited up to 10 pounds*, right?
>
> A Correct.
>
> Q *And why is it not classified at sedentary?*
>
> A Why it is not classified at sedentary?
>
> Q Right. What are the things you use for—
>
> A *There is no restriction on standing and walking.*
>
> ALJ: You are going to have to repeat it because I was having trouble hearing you.
>
> VE: *I said there is no restriction on standing and walking. Therefore there is no reason to limit the exertional to sedentary because of the lifting requirement. I can also point out the light work is anywhere from negligible weight and up to 20 pounds. The light and what you can or cannot lift at the light level.*
>
> ATTY: She lifted only up to 10 pounds. Is that right?
>
> ALJ: *That is what I said, up to 10 pounds occasionally and frequently.*
>
> ATTY: All right. *So based on that, would that limit her to sedentary work, sir?*

> VE: *Again, light work is anything from negligible and up to 20 pounds. So 10 pounds is in that weight description of negligible and up to –*
>
> ATTY: *Now the court did not give you lift up to 20 pounds. She said 10 pounds occasionally.*
>
> ALJ: Right. What he is saying even though it is 10 pounds a light job can be -- I am not putting jobs in your mouth. I just want to -- I understand where the question -- where counselor is coming from. I believe-- and *Mr. Vaughn [the vocational expert] will confirm or clarify what I said. His testimony that is because it is limited to 10 pounds, because there is no restrictions noted with respect to standing and walking, that it doesn't bring it down to a sedentary level. And that if you can -- if it is negligible and up to so anything between negligible and 20 pounds -- which 10 is right in the middle -- can still be a light job -- if it doesn't require the lifting and carrying over the 10 pounds.*
>
> VE: *Yes*. And *also if you look at the strength for light work, the 10 pound category is up to frequent. It would qualify as light work. Again, that falls within the descriptions the judge gave for light work.*
>
> BY ATTORNEY:
>
> Q I understand occasional activities were giving – limiting if an individual can occasionally stoop, occasionally crawl, occasionally kneel, occasionally crouch, occasionally climb ramps and stairs, wouldn't that be -- with occasional -- direct (inaudible). This is a light. And the postural activities as I mentioned, the occasional?
>
> A Again, for light work and the restrictions, the three jobs were listed would fall within those categories and as claimant performed past work again. There was no lifting or carrying requirements. The posturals would not be a hindrance to performing the past work.

R. 45–47 (emphasis added).

In her written decision, the ALJ specifically addressed Plaintiff's objections raised in a post hearing brief, including, *inter alia*, her objection that "the vocational expert's opinion that the claimant can perform her past relevant work as actually performed was not supported by a sufficiently detailed analysis to provide a function by function comparison of this work to her residual functional capacity":

> As to [counsel's] first objection, the undersigned notes that the claimant provided a detailed explanation of her work as a babysitter prior to her hearing (Exhibit 5E at 1, 2). Although the claimant noted that the heaviest weight she lifted was 20 to 40 pounds, *she specifically indicated that she lifted and carried items weighing no more than ten pounds* (Exhibit 5E at 2). However, at the hearing, *the claimant testified that she babysat for children no younger than five years of age, and her duties consisted of making breakfast and sitting with the children while they complete their homework* (Hearing Testimony). Moreover, in response to the questioning of the representative, *the vocational expert explained in detail how the claimant could perform both her past relevant work as she actually performed it and the other jobs offered within the confines of her residual functional capacity* (Hearing Testimony). As such, the undersigned finds that the vocational expert had ample knowledge of the claimant's prior work as described by the claimant at the time of the hearing, allowing for sufficient function-by-function comparison of her past work to her residual functional capacity.

R. 123 (emphasis added). The ALJ went on to explain that, in finding that Plaintiff was not disabled, she relied on the vocational expert's testimony, which she noted was consistent with the DOT except when he relied on his training and experience:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles except as outlined herein. At the hearing, the vocational expert testified that while his testimony is consistent with the Dictionary of Occupational Titles, his testimony also included information that is not covered by this publication. Specifically, the limitation on overhead reaching as opposed to reaching in all directions, the ability to perform light exertional work with lifting of no more than ten pounds and employer tolerance of absenteeism and off task behavior are not addressed. He testified that his response with regard to these limitations was based on his training and professional experience (Hearing Testimony).
>
> The Social Security Administration has set forth rules and regulations regarding the proper use of a vocational expert (see, for example, 20 CFR 404.1560; HALLEX I-2-5-30; HALLEX I-2-5-48; HALLEX I-2-5-52). Notably, the current matter has been conducted in accordance with the Agency's rules and regulations. Further, though not bound by the testimony, an Administrative Law Judge must weigh the opinion of a vocational expert along with the other evidence of record. In the current instance, based on careful consideration of the totality of the record, the undersigned finds the testimony of the vocational expert conforms to the rules and regulations of the Social Security Administration, and therefore accepts his testimony in reliance on his expertise, education and experience.

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

R. 125.

In short, these hearing excerpts and this discussion by the ALJ reflect that the ALJ properly followed SSR 83-12's guidance: Having found that Plaintiff had the RFC for a reduced or limited range of light exertional work, *i.e.*, lifting and carrying 10 pounds both frequently and occasionally, the ALJ consulted a vocational expert to determine the extent of the erosion of the occupational base flowing from that RFC. As detailed above, the vocational expert testified that an individual with Plaintiff's vocational profile and that RFC could perform Plaintiff's past relevant work of babysitter as Plaintiff actually performed it, *i.e.*, at the light level of exertion, as well as three other light, unskilled jobs that existed in significant numbers in the economy. In light of this record, the ALJ did not err in relying on vocational expert testimony and properly concluded that Plaintiff was not disabled. *See Dombrowski v. Kijakazi*, No. 20-CV-1606, 2021 WL 6101431, at *12–13 (E.D. Pa. Aug. 11, 2021), *report and recommendation adopted*, No. CV 20-1606, 2021 WL 5446327 (E.D. Pa. Nov. 22, 2021) ("[T]he ALJ's RFC assessment falls 'somewhere in the middle' between the bases for sedentary and light work. Accordingly, the ALJ followed SSR 83-12(c) at the administrative hearing. She procured the testimony of a vocational expert (VE) to assist her, and asked the VE what jobs, if any, an individual with the specific limitations she assessed would be capable of performing. (R. 68). The VE identified four jobs that satisfied those criteria, and based on that testimony the ALJ found Plaintiff not disabled."); *Dewitt v. Berryhill*, No. CV 17-1283, 2019 WL 1040964, at *2–3 (W.D. Pa. Mar. 5, 2019) (finding that "[a]n ALJ is not required to rigidly apply exertional categories" and that where

additional limitations exist such that a claimant does not fall neatly within an exertional category, the ALJ should take those limitations into account when determining a claimant's RFC and appropriately reduce the occupational base, consulting with a vocational expert to the extent such base is unclear and concluding that "[t]his is precisely what the ALJ did here. Consequently, I find no error with respect to the ALJ's conclusion that [the claimant] was capable of light work").

To the extent that Plaintiff insists that it was "internally inconsistent" for the ALJ (and vocational expert) to classify Plaintiff's past relevant work as a babysitter (as she performed it) and the three other jobs identified by the vocational expert as light because they do not provide for lifting "no more than 20 pounds," Plaintiff is mistaken. "There is nothing oxymoronic in finding that a plaintiff can perform a limited range of light work. Such a finding is appropriate where, as here, the evidence shows that the plaintiff can perform some, though not all, of the exertional requirements of a particular range." *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 733 (E.D. Pa. 2005) (citing *Boone*, 353 F.3d at 210; SSR 83-12); *see also Johnson v. Colvin*, No. 4:15-CV-1463, 2016 WL 3144250, at *1–2 (M.D. Pa. June 6, 2016) (rejecting the claimant's challenge that the "RFC assessment is internally inconsistent because it would be impossible for her to engage in light work . . . if she is limited to two hours of standing per day" because this argument "overlooks the possibility that an RFC assessment may fall between exertional categories") (citing SSR. 83-12).

Finally, Plaintiff's argument that she, being 50 years old on her alleged disability onset date and therefore a person approaching advanced age, "would GRID out and be found disabled" if limited to sedentary work, *Plaintiff's Memorandum of Law*, ECF No. 10, p. 15, is likewise unavailing. As explained above, substantial evidence supports the ALJ's finding that Plaintiff's

17

past work of babysitter as she actually performed it and the other representative jobs identified by the vocational expert were appropriately classified as light work despite the lifting and carrying limitation found by the ALJ. *Cf. Hadzega v. Comm'r of Soc. Sec.*, No. CV 19-118-E, 2019 WL 7171411, at *1 (W.D. Pa. Dec. 23, 2019) (rejecting Plaintiff's argument that the ALJ should have found an RFC for sedentary work where "the ALJ determined that Plaintiff retained the RFC to perform light work with additional limitations, including an inability to lift more than five pounds with his left arm" and finding "no merit in Plaintiff's claim that the ALJ erred in his decision by relying on the VE's testimony rather than by simply finding Plaintiff to be disabled pursuant to the Grids").

## V. CONCLUSION

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 6, 2024                              *s/Norah McCann King*
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE